[No. 3673. Decided November 20, 1900.]

JOSEPH PAYETTE, *Appellant,* v. J. E. WILLIS, *Respondent.*

EXCEPTIONS TO FINDINGS—SUFFICIENCY.

The evidence upon which findings of fact were based will not be reviewed upon appeal, where the exception taken to the findings is a general one, applying to all of them, instead of particularly specifying the ones which are erroneous.

ATTORNEY AND CLIENT—VIOLATION OF TRUST.

The fact that an attorney, while conducting litigation respecting certain land in behalf of a client, buys up the tax titles against such land, would not constitute a violation of his duty as attorney, and evidence thereof is irrelevant in a proceeding instituted by the client for the purpose of having the court remove the attorney from further acting in that capacity.

SAME—CHANGE OF ATTORNEY—COMPENSATION.

Under Bal. Code, § 4769, which permits a change of attorneys in an action, upon the order of the court, in an application therefor by the client, but requires the charges of such attorney to be paid before any change can be made, the conclusion of law by the court that the client may discharge the attorney upon payment to him of $300 attorney's fees, and moneys advanced by him as costs, is warranted, where the findings of fact show that there was no contract between them as to the amount of compensation to be paid, that $300 was a reasonable compensation for the services rendered, and that certain sums had been expended by the attorney in behalf of his client as advanced costs.

SAME.

The mere fact that an attorney and client differed as to the kind or amount of compensation to be paid for services rendered, and that the attorney refused to proceed with the case until compensated according to his claims, and that, upon the trial of the question of compensation in a proceeding brought for the removal of the attorney the finding of the court was that there was no such contract for compensation as the attorney claimed, would not establish unfaithfulness to his client in the discharge of his duties as attorney, so as to occasion ground for his summary removal and for his deprivation of lien for services rendered.

Appeal from Superior Court, Lewis County.—Hon. ABRAHAM L. MILLER, Judge. Affirmed.

*Edward F. Hunter* (*A. E. Rice,* of counsel), for appellant.

*J. E. Willis* and *C. H. Forney,* for respondent.

The opinion of the court was delivered by

WHITE, J.—A motion has been made by the respondent to dismiss this appeal, but, from the view we take of the case, it is unnecessary to pass upon the same. This is in the nature of a special proceeding, and the complaint, stripped of abounding verbiage, amounts to this: That the respondent is a practicing attorney; that prior

to the 16th of December, 1896, the appellant employed
the respondent to represent him as an attorney in a suit
to set aside a deed (*Payette v. Ferrier,* 20 Wash. 479, 55
Pac. 629) and to reinvest title in the land mentioned in
the deed in appellant; that, prior to the bringing of said
action, it was agreed between respondent and appellant
that, in case appellant was restored to the land in litiga-
tion by the courts of the state, appellant was to pay
respondent for his services in the matter $100 and all
costs and expenses advanced by the respondent in the
action; that a trial of the cause, conducted by the respond-
ent, was had in the superior court of Lewis county, a
decision rendered against the appellant, and the case
appealed to the supreme court; that the supreme court
decided the case in favor of the appellant, and reversed
the lower court; that appellant has paid to respondent
the sum of $20 on account of costs; that respondent, since
the decision of the supreme court, refuses to proceed fur-
ther in said action or to withdraw from the same and
allow appellant to employ other counsel, unless the appel-
lant deed to respondent one-half the land in controversy
in said action; that appellant has been ready and willing
to pay the respondent the amount contracted to be paid
when he is restored· to the possession of the property in
litigation.   The prayer of the complaint is that the court
find whether or not the appellant is indebted to the
respondent and, if so, the amount of such indebtedness;
that for such indebtedness, if any be found, the court
make such order as the nature of the case demands.   The
answer denies the payment of the $20 and the contract
as to compensation pleaded. by the appellant.   The ser-
vices performed are affirmatively pleaded in the answer;
also, that $125 was expended by respondent in the ex-
pense of litigation, and that $15, and no more, of that

sum has been repaid; that a verbal agreement was made between appellant and respondent, in March, 1898, that, if respondent obtained a favorable decision from the supreme court in said action reversing the judgment of the lower court, then appellant would convey to respondent an undivided one-half of the land in controversy; and that such favorable decision was subsequently obtained. The respondent further pleads that the entire tract of land was worth $3,000; that his services in connection with the litigation were of the reasonable value of $1,500; that appellant refuses to execute and deliver a deed for one-half of the land to respondent; that respondent is willing to do all things remaining to be done by an attorney to put appellant in possession of said land, if appellant will make such conveyance. The prayer of the answer is that appellant be adjudged to convey to respondent half of said land, or, if the court shall decide to remove him as attorney, that the court shall determine and fix a fair and reasonable compensation for his services, and not permit any substitution of attorneys until such compensation be paid; that such compensation be fixed so as to be equal to one-half the value of the land, and that respondent be paid also his costs expended for appellant, less said $15. The reply denies the contract set out by the respondent's answer, the value of his services, and most of the other allegations in the answer. The complaint and reply in this case abound in verbiage and immaterial allegations and conclusions of law. The answer, also, is more prolix than necessary. The foregoing, however, is a summary of the pleadings. Both appellant and respondent, without demanding a jury, submitted to a trial of the issues by the court. The court made its findings and conclusions as follows:

"1st. That the said J. E. Willis now is, and was during all the time herein mentioned, a regularly admitted

and practicing attorney in the courts of this state.

2d. That on or about the 1st day of July, 1894, the plaintiff employed defendant to act as attorney for him in a certain matter then pending between the plaintiff and one J. R. Jacobus and others, which said employment resulted in the commencement of an action in the superior court of Lewis county, Washington, wherein Joseph Payette was plaintiff and J. W. Ferrier, administrator of the estate of Jacob Patton and Ida Patton, was defendant, and being No. 1378, and that subsequently another action between the same parties, affecting the same subject matter, was instituted by plaintiff, and being No. 1737. That said matter was litigated in the superior court of Lewis county, and later from thence to the supreme court of the state. And that defendant was employed to attend to said matters in said courts, and that in pursuance of such employment he did attend to said matters in said courts.

3d. That no contract or agreement was entered into between plaintiff and defendant fixing or determining the amount of defendant's compensation for such services.

4th. That $300 is a reasonable compensation to be allowed defendant as full compensation for said services.

5th. That defendant expended in behalf of plaintiff the sum of $75, advanced costs, no part of which has been paid, except the sum of $15.

6th. That plaintiff now desires to discharge defendant from further employment as attorney in said matter.

As a conclusion of law, the court concludes that plaintiff may discharge defendant from said employment upon the payment to him of the sum of $300 attorney's fees, and the sum of $60 as advanced costs."

The appellant excepted as follows:

"The plaintiff excepts to the findings of fact and conclusion of law, and the conclusion of the court that the plaintiff may discharge the defendant from said employment upon payment to him of the sum of $300 attorney's fees, and the sum of $60 as advanced costs."

As to the facts found, this exception is too general to constitute the exception provided for by law. Some of the findings are manifestly correct, and a general objection to the whole thereof is clearly insufficient, and this court is precluded from reviewing any questions of fact upon which such findings were based. *Hannegan v. Roth,* 12 Wash. 65 (40 Pac. 636); *Cook v. Tibbals,* 12 Wash. 207 (40 Pac. 935); *Schoonover v. Condon,* 12 Wash. 475 (41 Pac. 195).

The appellant tendered twenty-two findings of fact, to be substituted for the findings made by the court. The court refused to substitute the findings so tendered, and a general exception to the refusal of the court was noted. Many of the proposed findings were outside of the issues in the case, and were recitals of evidentiary ,matter merely, and they were properly rejected by the court. The facts found by the court substantially cover all the issues raised by the pleadings.

The appellant offered to show that, while the respondent was employed in the case, he bought in tax titles on the land in litigation; that the land had been sold for taxes; that the respondent paid the taxes to a certain extent without the knowledge of appellant, and that appellant had to borrow $400 to repay the taxes, penalties, and interest. The court ruled against the offer, and an exception was noted. The respondent claimed that he had a contract with the appellant for an undivided one-half interest in the land. The appellant neglected to pay his taxes. The respondent had a right to purchase the tax titles in order to protect his interest in the land. Aside from this, we are at a loss to understand how the duty of attorney to client was in any manner violated by the attorney's buying in the tax titles. Any one, under the law, had a right to buy the tax titles. The appellant was

not required to pay the respondent on redemption any more than he would have had to pay a stranger.

The pleadings and evidence in this case disclose the fact that the relation of client and attorney existed between appellant and respondent. A dispute arose between them as to the compensation to be paid to the attorney for his services, the appellant claiming that the sum to be paid was $100, the respondent claiming that he was to be compensated by the conveyance to him by appellant of a one-half interest in a certain tract of land, and a payment to him of costs and expenses advanced in the litigated action. The appellant thereupon desired to change his attorneys by substituting Edward F. Hunter, Esq., or by associating Mr. Hunter with the respondent in the further management of the case. The respondent refused to consent to the substitution of Mr. Hunter, or to allow Mr. Hunter to be associated with him in the management of the case. The appellant then commenced this proceeding, and, by his prayer therein, asked the court to find the amount in which he was indebted to the respondent for his services as attorney, and to make such order in the premises as the nature of the case demanded. The respondent, in his answer, set up a contract of employment different from that alleged by appellant, and also pleaded, in effect, that his services were reasonably worth $1,500. He prayed the court that, if it was deemed advisable to remove him as attorney, the court would fix a fair and reasonable compensation, etc., and not to permit his removal as attorney until the same and costs advanced by him had been paid. The special contract set up in the answer and the reasonableness of services were denied by appellant. Section 4769, Bal. Code, is as follows:

"The attorney in an action or special proceeding may be changed at any time before judgment or final determination as follows:

1.   Upon his own consent, filed with the clerk or entered upon the minutes; or

2.   Upon the order of the court, or a judge thereof, on the application of the client, or for other sufficient cause; but no such change can be made until the charges of such attorney have been paid by the party asking such change to be made."

The proceedings instituted by the appellant were under this section, and, as an incident, the court was called upon to determine whether any special contract of employment existed between appellant and respondent, and, if so, what that contract was.   The court, by its findings, necessarily determined that no special contract existed, and properly found that the respondent was entitled to what his services were reasonably worth, and fixed that amount at $300, together with the costs advanced by the respondent in the action which he prosecuted for appellant.   The issue was fairly joined as to the value of the services, and the appellant cross-examined the witnesses called by respondent as to the services rendered, and as to the value of the land in controversy in the suit of *Payette v. Ferrier, supra,* and also called witnesses in his own behalf as to the value of the land in such suit.   The only exception properly taken, and which the court is called upon to consider in this case, is the conclusion of the court, from the facts found, that "the plaintiff may discharge the defendant from said employment upon payment to him of the sum of $300 attorney's fees and the sum of $60, as advanced costs."   No rights guarantied to appellant under the federal or state constitution are violated by the judgment of the court on these findings, and the contention of the appellant in this respect is with-

out merit.   The effect of this judgment is simply to require the payment of compensation to an officer of the court for services rendered before another shall be substituted.   The statutes of this state (Bal. Code, § 4772,) give to an attorney, to the extent and value of the services performed by him in the action, a lien upon any judgment recovered therein.   The supreme court of Idaho, in passing on a similar question, says:

"It is further contended that the attorney is simply the agent of his client.  To a certain extent, this is true; but he is more than an agent.  He is also an officer of the court, and within his sphere and in the line of his special powers he is as independent as the judge of the court, and has not only his duties and obligations to the court and to his client, but he has rights and powers entirely different from and superior to an ordinary agent.  An agent receives his orders from, and is directed absolutely and wholly by, his principal, in the management of his business.  On the other hand, the business of the client which is submitted to his attorney is managed entirely by the attorney, and the client is advised and directed by him.  As to the business committed to his care, the attorney is the sole manager and director.  Hence his responsibilities are much greater than those of an ordinary agent.  His reputation and his abilities are at stake to some extent in every case he undertakes.  Hence the law says the client shall not discharge him arbitrarily in the midst of the performance of his duties.  But if you desire to change attorneys, you may do so with the consent of the court in a proper proceeding.  As in this case the court examines into the reasons for said change, and when he ascertains that the attorney has prosecuted his client's business to the best of his ability and with fidelity to the trust imposed upon him, he so finds.  Then, if the substitution is made, there is no reflection upon the ability or faithfulness of the attorney.  As to his right to fees or security for the same as a condition precedent to his discharge, the law says—and this court is in accord with this view—'that a party has no right arbitrarily to

change his attorney without paying or securing fees
earned, and the original attorney is not bound to consent
to a substitution, or deliver papers upon which he has
a lien, until the amount of his just demands is ascer-
tained by a court or referee, and paid or secured."
Weeks, Attys. §§ 250, 267, and cases there cited; Me-
chem, Ag. § 856; In re Herman, 50 Fed. 517; *Ronald
v. Association,* 30 Fed. 228; *Butchers' Union Slaughter-
House & Live-Stock Landing Co. v. Crescent City Live-
Stock Landing & Slaughter-House Co.* (La.) 6 South.
509; *Gardiner v. Tyler,* 36 How. Pr. 63. The substitu-
tion, however, of attorneys is a matter largely in the dis-
cretion of the court, and we do not say that there may not
be a case in which attorneys may be discharged without
paying or securing fees already earned. We do say that
the rule of law is that fees or commissions already earned
must be paid or secured before substitution can be had.
If this is impossible in any given case, this fact must
be shown by the party moving the discharge and substi-
tution, and then it should appear that justice to the client
or attorney demands the change. We do not say that there
does not exist in this case such a state of facts as renders
a change necessary and proper, and therefore do not con-
demn the judgment of the court below; but this change
should not be made without first paying or securing the
fees earned, unless, as is stated, the court below should
deem this impossible or impracticable." *Curtis v. Rich-
ards,* 40 Pac. 57. *Sloo v. Law,* 4 Blatch. 268.

In the last case cited the court says:

"It is the duty of the court to protect solicitors and
other officers of the court, when they have faithfully per-
formed their trust, and that duty should be faithfully
executed."

The appellant, however, insists that, inasmuch as the
court failed to find that the respondent was entitled to
one-half of the land, the refusal to proceed with the case
unless he received a deed for one-half establishes his
unfaithfulness to his client, and for that reason he should

have been summarily removed. It must be remembered that the court failed to find that the contract claimed by the appellant was the true contract between appellant and respondent. The mere fact that the appellant and respondent differed as to the kind or amount of compensation to be paid for services rendered in no way proves that the respondent was unfaithful to his client in the discharge of his duties as attorney.

Inasmuch as this is in the nature of a special proceeding, and as the conduct and charges for the services of an officer of the court are involved, we have disregarded the fact that no proper exceptions have been taken to the findings, and have examined the evidence. If we were called upon to review the findings, we would be inclined to increase, rather than diminish, the compensation awarded to respondent. Through his efforts a tract of land valued at $1,800 and $2,200 by the witnesses of appellant, and much higher by witnesses for respondent, and probably worth $3,000, was saved to the appellant. The services rendered involved a trial in the superior court, where the judgment was adverse to the appellant, and an appeal to this court, wherein the judgment of the court below was reversed and the appellant was awarded his land. The respondent has, with zeal, ability, and faithfulness, attended to the duties imposed upon him, and common honesty requires that he should be paid for his services. The judgment of the court below is, therefore, affirmed, with costs to respondent.

DUNBAR, C. J., and REAVIS, FULLERTON and ANDERS, JJ., concur.