## HUFFMAN, GUARDIAN, ET AL. v. RICKETS.

[No. 8,827. Filed January 26, 1916.]

1. CANCELLATION OF INSTRUMENTS.—*Deed Given for Future Support.*—*Complaint.*—*Sufficiency.*—A complaint to cancel a deed executed to a husband and wife in consideration of conditions subsequent for the grantor's support, alleging that one of the grantees was dead and the other insane, and that no person representing the surviving grantee furnished the required support to grantor, was not insufficient notwithstanding it did not allege that the failure of defendants to furnish the support was due to fraud or bad faith or induced by a wilful intention to disregard the conditions of the deed. p. 529.

2. DEEDS.—*Conditions.*—*Conveyance in Consideration of Support.*—*Construction.*—*Enforcement.*—Contracts by which aged and infirm persons convey property to others in consideration of an agreement for support are in a class to themselves with reference to their interpretation and enforcement, and, being regarded as imposing personal obligations which are nondelegable except with the consent of the grantor, will be enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture is expressly provided for. p. 532.

Huffman *v.* Rickets—60 Ind. App. 526.

3. DEEDS. — *Consideration.* — *Future Support.* — *Conditions Subsequent.*—A grant of lands in consideration of an agreement for the future support of the grantor, in the absence of a stipulation to the contrary, creates in the grantee an estate on condition subsequent. p. 533.

4. DEEDS.—*Construction.—Consideration.—Future Support.—Conditions Subsequent.*—A deed conveying land to a husband and wife subject to the condition that grantees are to maintain and care for grantor for her natural life, and providing that if grantees fail or refuse to comply with the condition in a reasonable manner the deed shall at once become null and void, created an estate on condition subsequent, for a breach of which the estate became forfeited and could be recovered. p. 533.

5. DEEDS.—*Consideration.—Future Support.—Breach of Condition. —Enforcement of Forfeiture.*—In the absence of any waiver or countervailing right, courts of equity have jurisdiction to render effective a forfeiture growing out of the breach of a condition subsequent for the care and support of a grantor by a cancellation of the instrument, and the real basis of such equitable jurisdiction is the situation of the grantor rather than that of the grantee. p. 534.

6. DEEDS.—*Consideration.—Future Support.—Breach of Condition. —Impossibility of Performance.*—A grantor is not precluded from obtaining a decree cancelling a deed made to a husband and wife on a condition subsequent for grantor's care and support, where one of the grantees dies and the other becomes insane, thus rendering performance by them impossible, either upon the theory that such impossibility is produced by an act of God, or that it vests the estate in the surviving grantee freed from the condition, or that grantor may be required to accept performance from the personal representatives of the grantees. pp. 536, 541.

7. DEEDS.—*Consideration.—Future Support.—Rescission.—Fraud.*— The rule that in cases where conveyances are made on the mere agreement to support as the consideration therefor, as distinguished from a conveyance made on such an agreement as a condition subsequent, the conveyance may be rescinded only when from the circumstances attending the failure to perform it may be inferred that grantee never intended to perform and that consequently the contract on his part was fraudulent from its inception, does not prevail in this State. p. 541.

8. CANCELLATION OF INSTRUMENTS.—*Deed Given for Support.— Demand for Performance.—Necessity.*—Where a grantor conveyed to a husband and wife on condition subsequent for the care and support of grantor, and the condition was thereafter rendered impossible of performance by the death of one of the grantees and the insanity of the other, the grantor was not required to make a demand for performance of the condition before suing to cancel the deed. p. 544.

9.  DEEDS.—*Consideration.*—*Support.*—*Breach of Condition.*—*Termination of Estate.*—Where the surviving grantee in a deed made on condition subsequent for the care and support of grantor, became incapable of performing by reason of insanity, such fact did not of itself terminate the estate, but rendered it susceptible to determination by some act of the grantor equivalent to a reëntry at common law. p. 546.

10.  DEEDS.—*Conditions Subsequent.*—*Breach.*—*Termination of Estate.*—*Reëntry.*—*Sufficiency.*—Where the surviving grantee in a deed made on condition subsequent for the care and support of grantor, became unable to perform by reason of insanity, his guardian had no power to deliver possession or reconvey for condition broken, so that the act of grantor plainly indicating to such guardian that she did not waive the breach of the condition, and that she claimed the lands as her own, was under the circumstances the equivalent of a sufficient reëntry. p. 546.

From Wells Circuit Court; *Wm. H. Eichhorn,* Judge.

Action by Nancy Rickets against Samuel H. Huffman, guardian of Cyrus F. Rickets, and another. From a judgment for plaintiff, this appeal is prosecuted. *Affirmed.*

*L. B. Simmons* and *Simmons & Dailey,* for appellants.

*John A. Bonham* and *Edwin C. Vaughn,* for appellee.

CALDWELL, J.—This action, commenced in the Blackford Circuit Court, was venued to the Wells Circuit Court and there tried.  Appellee, by her complaint, sought to procure the cancelation of a deed of warranty executed by her August 17, 1911, to her son, the appellant, Cyrus F. Rickets, and Margaret Rickets, husband and wife.  Her action is based on the alleged breach of conditions subsequent for her support and maintenance contained in the deed.  A trial by the court resulted in a judgment and decree canceling the deed as prayed.  The errors assigned and not waived are based on the overruling of the demurrer to the complaint and the

overruling of the motion for a new trial.   Under the latter assignment, the question of the sufficiency of the evidence is presented.

Three points to the following effect are urged against the sufficiency of the complaint:     (1) That Margaret Rickets having died, and Cyrus F. Rickets having become incurably insane, the condition subsequent contained in the deed is impossible of performance by reason of the acts of God, and the demurrer should have been sustained; (2) that the complaint is insufficient by reason of the absence of an allegation that the guardian, after his appointment and the children of Cyrus F. Rickets, after he became insane, failed to support and maintain appellee; (3) there being no allegation of fraud or bad faith on the part of either grantee to the deed or of appellant Huffman, or of a wilful intention not to comply with the conditions of the deed, appellee is not entitled to the equitable relief demanded, and the demurrer should have been sustained.

The complaint to the extent necessary to a proper consideration of the objections urged against it, is to the following effect:   On August 17, 1911, appellee was a widow more than eighty years of age, in poor health, and owned in fee a described tract of land in Blackford County, containing 49 acres, on the income from which she was dependent for her support.   On that day she executed a warranty deed by which she conveyed the tract to appellant Rickets and wife.   A copy of the deed is embodied in the complaint, its material provisions being as follows:

"This indenture witnesseth that Nancy Rickets, unmarried   *   *   *   convey and warrant to Cyrus F. Rickets and Margaret

Rickets, husband and wife * * * for and in consideration of $4,000, the receipt whereof, is hereby acknowledged, the following described real estate in Blackford County, in the State of Indiana (describing it), subject to the conditions hereinafter set out. Grantees hereby agree to maintain and care for grantor for her natural life in manner suited to her station in life, as she may reasonably require, and pay all expenses incident to such maintenance and care, except for clothing of grantor. If grantees herein shall fail or refuse to comply with the above conditions in a reasonable manner, then this deed shall at once become null and void. * * * "

It is alleged that Cyrus F. Rickets and his wife accepted the deed, and thereupon entered into possession of the lands thereunder, and that the grantees thereafter controlled, managed and cultivated the lands, and appropriated the crops therefrom. It is also alleged that the money consideration named in the deed was not paid or intended to be paid, and that the sole consideration for the execution of the deed was the provision for care and support.

As bearing on the first objection urged against its sufficiency, the complaint discloses that Margaret Rickets died soon after the execution of. the deed, and that Cyrus F. Rickets as surviving tenant by the entireties thereby became the sole owner of the title conveyed by the deed, and that thereafter in March, 1912, he became violently, permanently and incurably insane, and that he at that time was confined in the hospital for the insane at Richmond, where he remains.

As bearing on the second objection urged, the complaint alleges in substance that under appointment made by the Blackford Circuit Court at the

June term, 1912, appellant Huffman is the guardian of appellant Rickets as an insane person; that appellants have continued to cultivate the lands and appropriate the proceeds for their own purposes, and that since March, 1912, neither appellant, nor any person for them or either of them has complied with the conditions contained in the deed; that they have failed and refused and still fail and refuse to furnish anything for appellee's support, or to maintain or care for her or to pay any of the expense thereof, or to deliver to her any of the rents and profits from the tract of land; that appellee has been compelled to and has received from other persons and other relatives all support, maintenance and care that she has received since March, 1912, such persons being under no obligations to support her without compensation.

As to the third objection urged, there is no allegation in the complaint that appellants, Rickets and Huffman, guardian, in their failure to support and maintain appellee were actuated by fraud or bad faith, or that such failure was induced by a wilful intention to disregard the conditions of the deed. In the absence of an allegation to the contrary, it will be presumed that until Margaret Rickets died, the grantees to the deed faithfully performed its covenants, and that appellant Rickets, the surviving grantee, thereafter up until some time in March, 1912, continued to do so. Since that time, however, for reasons made obvious by the complaint, there has been a total failure on the part of the grantees personally to perform such covenants. If it were allowable for persons other than grantees thereafter in their behalf to perform such covenants, in the absence of appellee's consent thereto, it sufficiently appears from the complaint that no other persons representing grantees did so. From that time appellee

was supported, maintained and cared for by persons under no legal obligations to do so, and prompted by motives other than those growing out of some relation of privity to grantees. It, therefore, follows that the second objection to the complaint is untenable. We proceed to a consideration of the first and third objections.

Contracts by which aged and infirm persons convey all or a substantial part of their property to others in consideration of an agreement for

2. support, maintenance and care during their declining years, are with practical uniformity recognized by the courts as constituting a class by themselves in matters pertaining to their interpretation and enforcement. "There is in such transactions an element of confidence reposed by the old people in their grantee, sacred in its nature, a breach of which, and retention of the benefits, no court should tolerate by a refinement upon technical rules and principles of law. By the modern trend of authority these transactions are placed in a class by themselves, and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture of the estate is expressly provided for." *Bruer* v. *Bruer* (1909), 109 Minn. 260; 123 N. W. 813, 28 L. R. A. (N. S.) 608. See, also, *Brady* v. *Gregory* (1912), 49 Ind. App. 355, 366, 97 N. E. 452; *Cree* v. *Sherfy* (1894), 138 Ind. 354, 37 N. E. 787; *Bogie* v. *Bogie* (1876), 41 Wis. 209. The grantee to such a conveyance is usually a child, a near relative, a close friend, or other person in whom the grantor has such confidence that he is willing to entrust to him the peace and comfort of his last days. A conveyance is made to such a person by reason of a desire to have that person, rather than another, support and care for the grant-

or, and hence courts interpret such a contract as imposing on the grantee a personal obligation not delegable or assignable to another without the consent of the grantor. The deed here was made to à son and his wife, and its language to the effect that the grantees thereby agreed to maintain and care for appellee imports such a personal obligation. *Cree v. Sherfy, supra; Lindsay v. Glass* (1889), 119 Ind. 301, 21 N. E. 897; *Glocke v. Glocke* (1902), 113 Wis. 303, 89 N. W. 118, 57 L. R. A. 458. *Thomas v. Thomas* (1893), 24 Or. 251, 33 Pac. 565; *Eastman v. Batchelder* (1858), 36 N. H. 141, 72 Am. Dec. 295; 2 Devlin, Deeds (3d ed.) §859; 6 R. C. L. 817; 13 Cyc 695

It seems to be the settled rule in this jurisdiction that a grant of lands in consideration of an agreement for the future support of the grantor, in the absence of a stipulation to the contrary, creates in the grantee an estate on condition subsequent. *Cree v. Sherfy, supra; Tomlinson v. Tomlinson* (1904), 162 Ind. 530, 70 N. E. 881; *Brady v. Gregory, supra; Richter v. Richter* (1887), 111 Ind. 456, 12 N. E. 698; *Hefner v. Yount* (1847), 8 Blackf. 455. The rule, although not universal, prevails in most other jurisdictions. *Blake v. Blake* (1882), 56 Wis. 392, 14 N. W. 173; *Mansfield v. Mansfield* (1892), 92 Mich. 112, 52 N. W. 290; *Glocke v. Glocke, supra; Mash v. Bloom* (1907), 133 Wis. 646, 114 N. W. 457, 14 L. R. A. (N. S.) 1187, 14 Ann. Cas. 1012. The deed here, by its express terms, creates an estate on condition subsequent, in that it provides that on a failure or refusal to comply with the covenants of the deed, it shall at once become null and void. *Van Horn v. Mercer* (1902), 29 Ind. App. 277, 283, 64 N. E. 531; *Barker v. Cobb* (1858), 36 N. H. 344. In *Hershman v. Hershman* (1878), 63 Ind. 451, 457,

it is announced as a general and undisputed proposition, in a case such as this, that "Upon failure to perform the condition subsequent, the estate conveyed on such conditions or condition became forfeited, and might be recovered by the grantor." In *Lindsay* v. *Glass, supra,* the following language is used: "For the protection of persons who thus dispose of their property, courts are inclined to treat the transfer or conveyance, so long as the contract for support remains executory, as having been made upon the condition subsequent that the promise to furnish care and maintenance shall be fully and fairly performed. * * * Until the contract is fully performed on both sides, it is liable to be rescinded and the property reclaimed, leaving the parties to their remedies, respectively, for what may have been furnished under the contract." See, also, *Leach* v. *Leach* (1853), 4 Ind. 628, 58 Am. Dec. 642; *Hefner* v. *Yount, supra; Cree* v. *Sherfy, supra; Richter* v. *Richter, supra.*

In the case at bar, after March, 1912, under the averments of the complaint, there was a total failure to perform the condition subject to which the deed was executed. The performance of such condition constituted a continuing and fixed duty. *Van Horn* v. *Mercer, supra.* Under what seems to us to be the general trend of the decisions in cases of the nature of this, and in the absence of a waiver or of any countervailing right, courts of equity have jurisdiction to render effective a forfeiture growing out of a total or substantial breach of the condition, by canceling the instruments that form the muniments of title in the grantee. Since the grantor in such a case contracts for care and support at the hands of a designated person, rather than for such care and support generally, the exercise of such jurisdiction is sometimes

justified on the theory that any remedy at law is inadequate, and that damages otherwise recoverable would be speculative and conjectural. *Reeder* v. *Reeder* (1890), 89 Ky. 529, 12 S. W. 1063; or that the neglect or refusal to perform constitutes such a failure of consideration as entitles the grantor. to be restored to his original condition. *Haataja* v. *Saarenpas* (1912), 118 Minn. 255, 136 N. W. 871, or that the grantee holds the property in effect in trust to carry out the obligation assumed, and that his failure or refusal to do so constitutes such a violation of the trust as amounts to a fraud by reason of which the grantor may regain his property (*Diggins* v. *Doherty* [1885], 4 Mack. 172; *Barnes* v. *Barnes* [1892], 9 Mack. 479), or by reason of actual fraud at the inception of the contract (*Sherrin* v. *Flinn* [1900], 155 Ind. 422, 58 N. E. 549), or that the refusal to perform raises a presumption of fraud at the inception of the contract. *Stebbins* v. *Petty* (1904), 209 Ill. 291, 70 N. E. 673, 101 Am. St. 243. The grantor, usually aged and infirm, parts with his property in the full hope and expectation that he will receive tender care and ample support at the hands of the ones selected by him under the promptings of a trust and confidence reposed. He contracts to receive such care from that sort of a person. Through no fault of his own, circumstances intervene to the frustration of his hope and the defeat of his expectations. His property, in effect set apart to procure his own maintenance, and usually regardless of its comparative value, is in the hands of another. For some reason beyond his own control, he fails to receive the care and support for which he contracted, and being stripped of his substance, he can not use it to that end. To procure support, he is relegated to the charity of those bound to him by no legal obligation. An examination of the decisions

convinces us that it is the situation of the grantor thus presented, rather than that of the grantee that forms the real basis for the exercise of equitable jurisdiction to restore to him his property at his election on such terms as good conscience may demand. In *Glocke* v. *Glocke, supra,* the following language is used: "by repeated decisions of this and other courts, the law has been firmly established that where a son obtains title and possession of his father's property, giving as a consideration therefor his promise to support the grantor for life, such promise, whether the manner in which it is to be kept be definitely specified in the writing or not, is not delegable; that the property conveyed is held on condition subsequent; that for a breach thereof the title thereto will, at the election of the grantor, no sufficient equitable considerations to the contrary standing in the way, revert without judicial aid, the same as in any other case of breach of condition subsequent; and that the grantor may have the aid of a court of equity for such appropriate relief as may be necessary to judicially establish his status as regards the property and quiet his title thereto, removing any adverse claim or outstanding paper in regard thereto that may exist, which might be used, presently or in the future prejudicially to him."

In the case at bar, as we have said, it is not alleged in the complaint that Cyrus F. Rickets and his wife, prior to the decease of the latter, or that the former up to the time in March, 1912, when he became insane, failed in any particular to perform the conditions required by the deed. It will, therefore, as indicated, be presumed that the obligation assumed was faithfully discharged up to that time. Thereafter, however, the failure was total and absolute, due to the fact that

death removed the one grantee from the stage of action, and that the hand of mental affliction rested upon the other. The result in its relation to appellee, however, was the same as if there had been a wilful disregard of the condition in the face of an ability to perform it. Under these circumstances, appellants state three propositions, for each of which they contend in the alternative: (1) That the death of Margaret Rickets rendered joint performance by her and her husband impossible, through the intervention of an act of God, and that as a consequence the latter on the decease of the former took the estate freed from the condition. (2) That Cyrus F. Rickets having become incurably insane after the decease of his wife, performance by them or either of them was rendered impossible, and that the latter therefore on becoming insane took the estate free from the condition; that under the circumstances of either the first or the second proposition "appellee has no remedy, not even a right of support or damages". (3) That equity should assume jurisdiction and carry out the trust originating from the circumstances, otherwise than by enforcing a forfeiture for a breach of condition.

Preliminary to a consideration of the authorities cited by appellants in support of propositions one and two, it is well to observe that the condition became impossible of performance only in the sense that the grantees were rendered incapable. Appellee remained in being, her necessities have not diminished, and the lands which she conveyed to the end that she might be cared for and maintained are yet in existence and within the jurisdiction of the court. In each of the following cases cited by appellants, it is held that as the act of God or of the grantor or of the law rendered impossible of performance a condition subsequent, the estate of the grantee

became absolute when the impossibility of performance arose: *Davis* v. *Gray* (1872), 16 Wall. 203, 21 L. Ed. 447, where the state granted the lands, and by its subsequent act rendered the performance of the condition impossible; *Scoville* v. *McMahon* (1892), 62 Conn. 378, 26 Atl. 479, 36 Am. St. 350, 21 L. R. A. 58, where lands were granted to be used for a certain purpose, and that purpose was afterwards prohibited by law; *Morse* v. *Hayden* (1889), 82 Me. 227, 19 Atl. 443, where lands were devised to testator's wife subject to the condition that she should provide for and maintain testator's son until he reached his majority, and the son died before he reached such age; *Parker* v. *Parker* (1878), 123 Mass. 584, where testator devised land to his son subject to a condition that the son support his brother, and the brother died before the decease of the testator; *Jones* v. *Doe* (1836), 2 Ill. 276, where lands were devised to testator's grandchildren on condition that they reside with the testator's wife, and the wife died; *McLachland* v. *McLachland* (1842), 9 Paige 533, where testator devised land to his grandson subject to possession in another for eight years, and on condition that the grandson settle and reside on the lands, and the grandson died before the expiration of the eight years; *Merrill* v. *Emery* (1830), 27 Mass. 507, a legacy to a wife subject to a condition that she educate and bring up testator's granddaughter until she should arrive at the age of eighteen, and the wife died soon after the testator. In the last case it is held that if the condition required only the personal care of the wife, the obligation terminated at her death, and the estate became absolute in her representatives; if maintenance and support were required, the obligation became a charge against the legacy. These decisions we believe to be fairly dis-

tinguishable from the case here, generally, for the reason hereinbefore indicated that the case at bar belongs to a class, the cases composing which are to an extent controlled by their own peculiar rules. Specifically in the Davis case, the default was caused by the grantor's act. In the Scoville case, the right to performance had ceased to exist, as it had become illegal. In the Morse case the beneficiary of the condition having been maintained as long as he lived, its substantial provisions had been accomplished. In the Parker case, a like situation existed; also the Jones case, as the condition was for the benefit of the wife; also the McLachland case, as the condition was for the benefit of the grandson. The Merrill case more nearly approaches the case at bar, there being these substantial distinctions however: the condition was created for the benefit of a third person incapacitated by infancy, to choose proper guardians for her welfare; the will did not create a remainder in the beneficiary to become effectual on breach of condition, and which she might use for her care and support; had the estate been forfeited, the heir was not obligated to perform the condition. It is evident, therefore, that the testator's purpose could best be accomplished by a charge on the legacy.

In support of the foregoing propositions and also of a proposition that if the grantee shall die or become incapacitated to perform the condition for support, it may and should be performed by the administrator, heirs, or representatives, appellant cites also *Cross* v. *Carson* (1846), 8 Blackf. 138, 44 Am. Dec. 742; *Cree* v. *Sherfy, supra; Calkins* v. *Calkins* (1906), 220 Ill. 111, 77 N. E. 102; *Stebbins* v. *Petty, supra.* In the Cross case, the condition for support subject to which the conveyance was made, as interpreted by the Supreme Court, did not create

an obligation personal to the grantor's son, but the conveyance was to him and his heirs "condition upon his and their" performing it. In the Cree case, the contract for support by its terms, and as construed required the personal services of the grantee, the grantor's son. The grantee having died leaving surviving him a widow and children, the grantor waived the personal nature of the services to be performed, and consented to be cared for by the widow and children, which services they refused to perform. The trial court, at the suit of the grantor, enforced a forfeiture for breach of condition, and the decree was approved by the Supreme Court. The question of the right of the widow and children to perform the condition, the grantor not consenting, or the right of the grantor to enforce a forfeiture on the death of the grantee, the widow and children being ready and willing to perform, was not presented or decided. The following, quoted from the Calkins case, indicates the decision: "Neither can the deed be avoided or set aside for the reason that the grantee has been prevented, by reason of death, from carrying out his contract to furnish support to the grantors during their lifetime, because where, as here, he complied with the contract up to the time of his death, there can be no presumption of fraud on the part of the grantee." The foregoing decision is based on the Stebbins case, *supra*, and the following quotation from the latter is sufficient to indicate that the Illinois decisions are not in harmony with the spirit of our own or with the weight of authority: "In Indiana, as well as in the other states, excepting Illinois, where the courts of last resort have considered contracts of this character, so far as we have been referred to their decisions by appellant, the relief is placed on the theory that the agreement to maintain will be read

into the deed as a condition subsequent, and that the latter instrument will be construed as though the granting portion thereof were followed by words stating that it is made upon condition that the grantee support and maintain the grantor so long as the latter lives. Under such a construction it is apparent that whenever support and maintenance were not furnished to the grantor, no matter what occasioned the default, unless performance was excused by him, he could enforce the condition. We have never so construed these deeds."

It will be observed that the Illinois court is speaking of the rule in that state in cases where conveyances are made on the mere agreement to

7. support as the consideration therefor, rather than of cases where by the express terms of the deed, the conveyance is made on such an

6. agreement as a condition subsequent. In the former sort of case, the decision last cited states that the conveyance may be rescinded only when from the circumstances attending the failure to perform it may be inferred that the grantee never intended to perform, and that as a consequence the contract on the part of the grantee was fraudulent from its inception. As indicated in the case last cited, such is not the rule in this State, nor is it the rule generally accepted.

In *Payette* v. *Ferrier* (1899), 20 Wash. 479, 55 Pac. 629, Payette conveyed lands to his daughter and her husband in consideration of an agreement for support. The grantees carried out the agreement for a number of years, and then parted with title, and thereafter both died. Payette brought an action against the administrator and heirs of the deceased daughter and her husband to cancel the conveyance. The court, after stating that the jurisdiction of courts of equity to cancel a deed under

such circumstances, where the grantee fails to support the grantor, and after discussing the effect of the fact that grantees parted with title, used this language: "We think there is also another reason why the plaintiff is entitled to be revested with title. The covenants of the grantees to support and maintain the plaintiff were personal and died with them. The happening of that event put an end to the obligation. * * * Upon principle, the cause does not differ from the one we have just discussed. The right of the parent to a return rests in either case upon the failure of consideration, and inability of his child to render service or perform the condition upon which he was entrusted with the property." See, also, *Payette* v. *Ferrier* (1903), 31 Wash. 43, 71 Pac. 546.

In *Bishop* v. *Aldrich* (1880), 48 Wis. 619, 4 N. W. 775, an old man and his wife conveyed their farm to their daughter, Mrs. Carleton, in consideration of an agreement for support. The daughter performed the covenant for four months and then died. The following language used in a suit brought to cancel the deed indicates the scope of the decision: "The covenants of Mrs. Carleton to support and maintain the plaintiffs were not assignable, and died with her. Her death, a few months after the conveyance, put an end to the obligation to maintain the plaintiffs; and, if the conveyance stands, her heirs would take the land conveyed to her * * * without any obligation on their part to perform her covenants. This would be most inequitable. The use of the property may or may not be sufficient to maintain the plaintiffs; but whether it is or not, the principle is the same. The consideration for the conveyance has failed, and, under the circumstances peculiar to cases of this class the conveyance ought to fail with it."

The contract here contemplated as a substantial part of the consideration personal services to be rendered by the grantees. It would seem apparent that on the decease of one grantee and the permanent incapacity of the other, the services contracted for being personal, the grantor could not be compelled to accept performance by their representatives and also that such representatives could not be required to perform, one grantee being deceased and the other incapacitated, as aforesaid. 1 Beach, Contracts §227, note; *Cree* v. *Sherfy, supra; Lindsay* v. *Glass, supra; Williams* v. *Butler* (1915), 58 Ind. App. 47, 105 N. E. 387, 107 N. E. 300; *Marvel* v. *Phillips* (1894), 162 Mass. 399, 38 N. E. 1117, 44 Am. St. 370, 26 L. R. A. 416; *Parker* v. *Macomber* (1893), 17 R. I. 674, 24 Atl. 464, 16 L. R. A: 858; *Drummond* v. *Crane* (1893), 159 Mass. 577, 35 N. E. 90, 23 L. R. A. 777, note; *McFarlane* v. *Allan-Pfeiffer Co.* (1910), 59 Wash. 154, 109 Pac. 604, 28 L. R. A. (N. S.) 314, note, Ann. Cas. 1912 A 1180. Under such circumstances "It is the province of a court of conscience when asked for relief, a right of action having arisen to one of the parties, to place the survivors as nearly in the position relatively they would have occupied, but for the death, as it was possible to do. Act of God inures as excuse and relief to both parties to a contract. If it legally releases the one from executing a work he has undertaken, it equally protects the other from paying for more than has been done." *Cree* v. *Sherfy, supra,* 360.

We are asked, however, in the event that we hold that Cyrus F. Rickets can not retain the lands free from the condition subsequent, to follow *Keister* v. *Curbine* (1903), 101 Va. 768, 45 S. E. 285. In that case, which presented some features similar to those in the case at bar, the court declined to enforce a

rescission of the deed, but directed that the property be administered by a receiver for the benefit of the infant children of the deceased grantee, subject to the right of the grantor for support therefrom. The special circumstances of that case were controlling the court recognizing as proper in the ordinary case the remedy by rescission and restoration of the grantor to his original status. Here we are bound to hold that a substantial part of the consideration for the execution of the deed was the personal care and attention of grantees. The benefit of that part of the consideration at the hands of the grantees has failed appellee beyond recall, and through no fault of her own. Of living persons with capacity to perform, we should presume that she is best able to determine whose personal services would be most agreeable to her. She can procure such services effectively and of her own selection only by the use of her lands, the title to which should be revested in her, to that end. Neither the complaint nor the evidence, which we shall hereafter briefly consider, shows the existence of a countervailing equity in others sufficiently potent to forbid such a decree. That no injustice may be done, and all parties restored to their original status as nearly as possible, an accounting may be had, in which should be included as one of the items the value of services performed and support furnished. *Cree* v. *Sherfy, supra; Hershman* v. *Hershman, supra; Leach* v. *Leach, supra; Maddox* v. *Maddox* (1909), 135 Ky. 403, 122 S. W. 201; *Johnson* v. *Paulson* (1908), 103 Minn. 158, 114 N. W. 739. The court did not err in overruling the demurrer to the complaint.

In our consideration of the complaint, we have disposed of most of the points made respecting 8. the sufficiency of the evidence. The evidence in the main supports the complaint as

hereinbefore abstracted. Specifically there was evidence that when the deed was executed August 17, 1911, Cyrus F. Rickets, his wife, Margaret Rickets, his son, George, and his wife, and two younger sons lived as one family on the lands conveyed. They continued to so live thereafter. Margaret died in October. Cyrus thereafter on a number of occasions expressed his fears as to his ability to care for appellee, and declared that her daughters must perform that service. Cyrus became insane in March, 1912, and was taken to the hospital for the insane. Shortly thereafter appellee went to the home of her daughter, ostensibly on a visit, and shortly returned to the old home, where she remained two weeks with George and his wife, and then returned to her daughter, where she remained. In January, 1913, she fell and fractured her hip, which disabled her to the extent that she was unable to attend the trial. The same winter the house on the lands involved burned, whereupon George and his family moved to Oklahoma, where they remained. Shortly after appellant Huffman was appointed guardian of Cyrus F. Rickets, appellee's son-in-law, at her request asked the guardian what he proposed to do respecting appellee's support. The guardian responded that he did not know. Later, at appellee's request, the son-in-law again called on the guardian, and informed him that appellee thought the land under all the circumstances should be in her name, to be used for her support, as it had been set apart for that purpose, and asked him to convey it back. The guardian responded that the land ought to be in appellee's name, and that he would see what he could do. No steps were taken, however, to reconvey the land. It is urged that the evidence is

insufficient in that it fails to show a demand for the performance of the condition of the deed, and that it also fails to show a reëntry for condition broken. As we have indicated, appellee was not required to accept performance from any other person than Cyrus F. Rickets, his wife being dead. Cyrus was incapacitated either to perform or to entertain a demand to that end. For this reason a demand on him would have been futile. Under such circumstances, a demand for performance was not required. *Cree* v. *Sherfy, supra; Richter* v. *Richter, supra; Ellis* v. *Elkhart Car Works Co.* (1884), 97 Ind. 247; *Tomlinson* v. *Tomlinson, supra.*

The mere fact that Cyrus F. Rickets, his wife having died, failed to perform the conditions of the deed would not determine the estate thereby granted, as appellee might have waived the breach. Such fact, however, rendered the estate conveyed susceptible to determination at grantor's election, as indicated by some act equivalent to a reëntry at common law. With us, a demand for possession is equivalent to reëntry. Cyrus F. Rickets was entirely incapacitated to entertain a demand for possession, and likewise to reconvey the premises. The guardian's powers over the real estate of his ward, in so far as concerns its dispostion are conferred and limited by statute. Such powers do not include the right to deliver possession or to reconvey for condition broken. §§3017, 3078 Burns 1914, §§2486, 2528 R. S. 1881. Under such circumstances, appellee through her agent, plainly indicated to the guardian as the only person clothed with the semblance of capacity and power that she did not waive the breach of the condition, and that she claimed the lands as her own. Under such circumstances, it is our judgment that the evidence showed the equivalent of a suffi-

cient reëntry.  See the following:  *Lindsay* v. *Lindsay* (1874), 45 Ind. 552; *Clark* v. *Holton* (1877), 57 Ind. 564; *Van Horn* v. *Mercer, supra; Mash* v. *Bloom* (1907), 14 L. R. A. (N. S.) 1188, note.

The evidence is sufficient to sustain the decision and the judgment is affirmed.

NOTE.—Reported in 111 N. E. 322. As to the remedy of a grantor in a conveyance given to secure his support on breach of the condition by the grantee, see 12 Ann. Cas. 899. See, also, under (1) 6 Cyc 324; (2) 13 Cyc 690, 695; (3) 13 Cyc 691; (4) 13 Cyc 709, 710; (5) 13 Cyc 710; (6) 13 Cyc 704; (7) 6 Cyc 288; 13 Cyc 710; (8) 13 Cyc 713; (9) 13 Cyc 706; (10) 13 Cyc 712.